JUDGE McMAHON

14 CV 2800

IN THE UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF NEW YORK

RECEIVED
APR 18 2014
U.S.D.C. S.D. N.Y.
CASHIERS

| | | |
|---|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION | ) ) ) | |
| Plaintiff, | ) ) | Civil No._____ |
| vs. | ) ) | COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF |
| BRUNSWICK CAPITAL LLC, BRUNSWICK CAPITAL PARTNERS LP - and - WAYNE P. WEDDINGTON III, | ) ) ) ) ) | AND CIVIL MONETARY PENALTIES UNDER THE COMMODITY EXCHANGE ACT |
| Defendants. | ) ) ) | |

## I.   SUMMARY

The United States Commodity Futures Trading Commission ("CFTC" or "Commission"),
by and through its attorneys, hereby alleges as follows:

1.     Since at least October 2008 to at least January 12, 2012 ("the relevant period"),
Defendant Wayne Pennoyer Weddington III ("Weddington"), individually and as a controlling
person of Defendants Brunswick Capital Partners LLC ("BCLLC") and Brunswick Capital
Partners LP ("BCLP"), has filed false records with the Commission, acted in capacities
requiring registration with the Commission without the benefit of registration, and engaged in
various forms of solicitation fraud in connection with a commodity pool he formed called the
Pennoyer International Funds Global Opportunity LLC ("Pennoyer Fund"), in violation of the
Commodity Exchange Act, as amended ("Act"), 7 U.S.C. §§ 1 *et seq.* (2012), and the
Commission Regulations promulgated thereunder ("Regulations"), 17 C.F.R. §§ 1.1 *et seq.*
(2013).

2.      Weddington formed the Pennoyer Fund to trade E-mini S&P 500 futures contracts as well as other e-mini index futures and arranged for BCLLC to act as the commodity pool operator ("CPO") for the Pennoyer Fund, and BCLP to act as the commodity trading advisor ("CTA") for the Pennoyer Fund.  Weddington solicited funds from members of the public to invest in the Pennoyer Fund, and between October and December 2008 BCLLC and the Pennoyer Fund had accepted approximately $1.5 million from nine investors.

3.      Instead of registering with the Commission to advise the fund, in October 2008, Weddington and BCLP filed a notice of exemption from CTA registration with the National Futures Association ("NFA"), the registered futures association designated to administer Commission registrations.  Weddington and BCLP's filing of a notice of exemption falsely represented that BCLP was a registered investment advisor.  Because Defendants BCLP and Weddington were not entitled to the exemption they claimed, they filed a false record with the Commission and further violated the Act by then advising the Pennoyer Fund in the trading of S&P e-mini futures contracts without benefit of Commission regulation.

4.      The Pennoyer Fund lost over 30 percent of its net asset value during its first ten months of operation, and in or about July 2009 Defendants refunded the balance of the participation interests in the Pennoyer Fund.  However, Defendants BCLLC, BCLP and Weddington then proceeded to fraudulently solicit funds from new prospective participants for the Pennoyer Fund without disclosing the prior losses.  To the contrary, Defendants created and distributed false performance and financial records in its promotional and marketing material, claiming that a trading system they developed to trade E-mini S&P 500 futures contracts made profits for the Pennoyer Fund nearly every month, and had achieved over thirty percent profit in one year.  Defendants failed to disclose to prospective participants both the trading losses and the

2

fact that the performance record they touted included hypothetical trading. Defendants succeeded in soliciting another $1.5 million from two investors, but returned their funds after the investors discovered that Weddington did not have the trading success he claimed to have had.

5.      By virtue of this conduct and the conduct further described herein, Defendants BCLLC, BCLP and Weddington, directly and through the acts and omissions of their agents and employees, have engaged, are engaging, or are about to engage in acts and practices in violation of Sections 4b(a)(1)(A) and (C) and 4o(1)(A) and (B), 7 U.S.C. §§ 4b(a)(1)(A) and (C), 6o(1) (A) and (B), and Commission Regulation 4.41 (b), 17 C.F.R § 4.41(b). Additionally, Defendants BCLP and Weddington have engaged, are engaging, or are about to engage in acts and practices in violation of Sections 4m(1) and 9(a)(4) of the Act, 7 U.S.C. §§ 6m(1) and 13(a)(4).

6.      Weddington directly or indirectly controlled BCLLC and BCLP and did not act in good faith or knowingly induced, directly or indirectly BCLLC and BCLP's violations and, therefore, is liable for their violations pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b). The foregoing acts, omissions, and failures of Weddington, his agents and employees, occurred within the scope of his employment with BCLLC and BCLP. Therefore, BCLLC and BCLP are liable for his acts, omissions and failures pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2.

7.      Accordingly, pursuant to Section 6c of the Act, to be codified at 7 U.S.C. § 13a-1, the Commission brings this action to enjoin Defendants' unlawful acts and practices and to compel their compliance with the Act and to further enjoin Defendants from engaging in certain commodity activity. In addition, the Commission seeks civil monetary penalties and remedial ancillary relief, including, but not limited to, trading and registration bans, restitution,

disgorgement, rescission, pre- and post-judgment interest, and such other relief as the Court may deem necessary and appropriate.

8.     Unless restrained and enjoined by this Court, Defendants are likely to continue to engage in the acts and practices alleged in this Complaint and similar acts and practices, as more fully described below.

## II.     JURISDICTION AND VENUE

9.     Section 6c(a) of the Act, to be codified at 7 U.S.C. § 13a-1(a), authorizes the Commission to seek injunctive relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of the Act or any rule, regulation, or order thereunder.

10.     Venue properly lies with the Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), because Defendants transacted business in the Southern District of New York and the transactions, acts, practices, and courses of business alleged occurred, are occurring, and/or are about to occur within this District.

## III.     PARTIES

11.     **The Commodity Futures Trading Commission** is an independent federal regulatory agency that is charged by Congress with the responsibility for administering and enforcing the provisions of the Act, and the Commission Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.*.

12.     **Brunswick Capital LLC** is a Connecticut limited liability corporation with its principal place of business in New Canaan, Connecticut.  Weddington and a business partner formed BCLLC in 2004.  Weddington became BCLLC's managing member and BCLLC served

as the CPO for the Pennoyer Fund.  BCLLC has never been registered with the Commission in any capacity.

13.     **Brunswick Capital Partners LP** is a Delaware limited partnership with its principal place of business in New York, New York.  Weddington formed BCLP in 2007. Weddington became BCLP's general partner and president and BCLP served as the advisor to the Pennoyer Fund.  From its inception until October 2011, BCLP was not registered with the Commission.  BCLP became registered with the Commission as a CTA in October 2011 and is currently registered in that capacity.

14.     **Wayne Pennoyer Weddington III** is a resident of New York, New York. Weddington formed BCLLC and is its managing member.  Weddington also formed BCLP and is its' general partner and president.  During the relevant period, Weddington was not registered with the Commission.  Weddington became registered with the Commission as an associated person ("AP") of BCLP in January 2012 and is currently registered in that capacity.

## IV.     FACTS

### A.     Statutory Background

15.     Section 1a(12) of the Act defines a CTA as any person who for compensation or profit, engages in the business of advising others, either directly or through publications, writings, or electronic media, as to the value of or the advisability of trading in: i) any contract of sale of a commodity for future delivery made or to be made on or subject to the rules of a contract market or derivatives transaction execution facility; ii) any commodity option authorized under Section 4c of the Act; or iii) any leverage transaction authorized under Section 19 of the Act; or a person who for compensation or profit, and as part of a regular business, issues or promulgates analyses or reports concerning any of the activities referred to above.

16.     Section 4m(1) of the Act, 7 U.S.C. § 6m(1), makes it unlawful for any CTA or CPO to make use of the mails or any means of the instrumentalities of interstate commerce in connection with its business as a CTA or CPO, respectively, unless registered under the Act.

17.     Commission Regulation 4.14(a)(8)(i)(D), 17 C.F.R. § 4.14(a)(8(i)(D), in relevant part, exempts from CTA registration with the Commission advisors to certain pools only so long as the advisor meets Investment Adviser Act of 1940 ("IAA") registration, exemption or exclusion requirements, and the commodity trading advice it provides is solely incidental to the business of providing securities or other investment advice.

18.     Section 9(a)(4) of the Act, 7 U.S.C. § 13, in relevant part, makes it unlawful for any person to willfully make any false, fictitious, or fraudulent statement or representation, or make or use any false writing or document knowing the same to contain a false, fictitious or fraudulent statement or entry, to a registered entity, board of trade or futures association designated or registered under the Act acting in furtherance of its official duties under the Act.

19.     Section 4b(a)(1)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(1)(A) and (C), makes it unlawful for any person in or in connection with any order to make or the making of any futures contract, to cheat, defraud or willfully deceive, or attempt to cheat, defraud or willfully deceive, any other person by any means whatsoever.

20.     Section 4o(1)(A) and (B) of the Act, 7 U.S.C. § 6o(1)(A) and (B) makes it unlawful for a CTA or CPO to make use of the mails or any means or instrumentalities of interstate commerce, directly or indirectly to employ any device, scheme, or artifice to defraud any participant or prospective participant; or to engage in any transaction or course of business which operates as a fraud or deceit upon any  participant or prospective participant.

6

21.    Commission Regulation 4.41(b), 17 C.F.R § 4.41(b), prohibits any person from presenting the performance of any simulated or hypothetical commodity interest account, transaction in a commodity interest or series of transactions in a commodity interest of a CPO, CTA, or any principal thereof unless such performance is accompanied the hypothetical disclaimer contained in Commission Regulation 4.41(b), 17 C.F.R. §4.41(b).

**B.    Formation and Operation of the Pennoyer Fund, False Exemption and Unregistered Activity**

22.    Defendants formed the Pennoyer Fund in approximately 2007, and installed BCLLC as the fund's CPO and BCLP as the fund's advisor.  Weddington served as BCLLC's managing member and BCLP's general partner and president.  Defendants were entitled to compensation from the Pennoyer Fund in the form of management or incentive fees.

23.    Between October and December 2008, the Defendants had solicited and accepted approximately $1.5 million from nine investors for interests in the pool, which was to trade E-mini S&P 500 futures contracts and other e-mini index products offered on the Chicago Mercantile Exchange, Inc. ("CME").

24.    CPOs and CTAs must electronically file with NFA all notices of exclusion or exemption from the Commission's registration requirements.

25.    In October 2008, before commencing trading in the pool, Weddington, on behalf of BCLLC, filed a notice of exemption under Commission Regulation 4.13(a)(4), 17 C.F.R. § 4.13(a)(4), for BCLLC to operate as an exempt CPO.

26.    At the same time, Weddington, on behalf of BCLP, filed a notice of exemption under Commission Regulation 4.14(a)(8) for BCLP to act as an exempt CTA to advise and trade the Pennoyer Fund without benefit of Commission registration.  Commission Regulation 4.14(a)(8), 17 C.F.R. § 4.14(a)(8), provides that a person is not required to register as a CTA if

7

(1) the advisor is already registered as an investment adviser under the IAA, registered with a state securities regulatory agency, or excluded from the definition of an IAA; and, (2) the commodity trading advice given is solely incidental to the advisor's business of providing securities or other investment advice.

27.     The notice of exemption Defendants Weddington and BCLP filed for BCLP under Regulation 4.14 was false for two reasons. First, neither BCLP nor Weddington was registered under the IAA during the relevant period, nor were they excluded from the definition of the term IAA. Second, Defendants' commodity trading advice was not solely incidental to providing securities or other investment advice to the Pennoyer Fund.

28.     Defendants' filing of a false notice of exemption was willful. Weddington and BCLP knew that they were not registered under the IAA because they never sought such registration, despite having received specific instructions from his attorney that he needed to make the necessary filings with the Securities and Exchange Commission and relevant state authorities. Further, Weddington and BCLP knew that the commodity trading advice BCLP provided was not merely incidental to the operation of the Pennoyer Fund because Weddington and BCLP opened and funded the Pennoyer Fund's futures trading accounts and because the $1.5 million Defendants traded in E-mini S&P 500 futures contracts from October 2008 through July 2009 made up the overwhelming majority of the funds in the Pennoyer Fund.

29.     Defendants' CTA exemption remained false until BCLP registered with the Commission as a CTA in October 2011.

30.     BCLP acted as a CTA and Weddington acted as an associated person of a CTA throughout the relevant period by soliciting funds from participants and prospective participants to trade in E-mini S&P 500 futures contracts in the Pennoyer Fund, and advised others directly

or indirectly or through publications, writings or electronic media as to the value or the advisability of trading in commodity futures or options contracts.

C.    **Defendants' Fraud, Attempted Fraud and Deceptive Acts and Practices**

31.    By July 2009, the Pennoyer Fund had lost approximately 30% of its value through among other things, trading losses and fees. Defendants returned the remaining funds to the pool participants.

32.    Defendants did not close the Pennoyer Fund, but instead commenced soliciting new participants to recapitalize it. In the course of soliciting new participants and prospective participants after July 2009, Defendants made material misrepresentations, omitted material facts and engaged in deceptive acts and practices in attempts to defraud the participants and prospective participants. For example, Defendants created false performance and financial records and promotional material that they used from at least February 2010 to July 2011, in which they claimed that an algorithmic trading system Weddington had developed called "SysMacro" to trade E-mini S&P 500 futures contracts in the Pennoyer Fund made profits nearly every month and over 30% in one year. In fact, the Pennoyer Fund, which Defendants purportedly traded pursuant to the SysMacro trading system, lost funds nearly every month during the February 2010 to July 2011 time period, culminating in substantial losses. Weddington traded, or reviewed the trading, of the Pennoyer Fund futures account and its trading system, and was therefore aware of the fund's and the system's losses. Defendants did not disclose these losses to the new Pennoyer Fund participants or prospective participants that Defendants solicited.

33.    Additionally, some of the trading Defendants used to create the false performance records purportedly took place in a hypothetical trading account. Defendants failed to disclose to new participants or prospective participants that some of the trading results contained in the

performance records were hypothetical and instead presented the results in promotional and marketing material as actual trading results.

34.     Defendants hired marketing managers to assist soliciting the new participants and prospective participants, and provided the marketing managers with promotional material containing the false performance records of the Pennoyer Fund futures account. Defendants intended that the marketing managers use the false performance records and false promotional material to solicit prospective participants and knew or recklessly disregarded that the marketing managers were presenting false and misleading promotional material to prospective participants.

35.     In or about October 2010, Defendants solicited and obtained approximately $500,000 from a participant to trade in the Pennoyer Fund. Defendants lost at least $30,000 of the participant's funds within two to three months. Defendants, knowing these losses occurred, continued to claim to prospective participants that their trading of the Pennoyer Fund was profitable.

36.     In or about March 2011, Defendants set up and attended meetings with a major financial services company in attempts to obtain trading funds. Defendants used the false performance records and undisclosed purported hypothetical trading results to solicit the financial services company. Further, Defendants falsely inflated the Pennoyer Fund's assets in a financial prospectus they provided to the financial services company, claiming that the Pennoyer Fund had between one and three million dollars in assets under management, when, in fact, the Pennoyer Fund at that time had approximately $270,000.

37.     In or about August 2011, Defendants, through their marketing managers, solicited and obtained approximately $1,000,000 from another participant. Shortly thereafter, Defendants

had to return the funds to the participant when the participant learned that Defendants did not have the trading success represented in their promotional material.

38.     During the relevant period, Weddington at all times controlled acted on behalf of BCLLC, BCLP and the Pennoyer Fund. For example, Weddington opened and signed on behalf of both BCLLC and BCLP all of the account agreements necessary to open and trade the Pennoyer Fund futures accounts, signed corporate documents assigning BCLLC and BCLP as the Pennoyer Fund's operator and advisor. Weddington also created the false Pennoyer Fund performance records, as well as the false promotional material, and hired the marketing managers and armed them with the false promotional material to solicit participants and prospective participants.

39.     Weddington's primary professional activity still involves financial consulting and acting as a private equity advisor/financing.

## V. VIOLATIONS OF THE COMMODITY EXCHANGE ACT

### COUNT I

### VIOLATIONS OF SECTION 9(a)(4) OF THE ACT:
### Filing a False Record

40.     The allegations set forth in paragraphs 1 through 39 are re-alleged and incorporated herein.

41.     Section 9(a)(4) of the Act, 7 U.S.C. §13, in relevant part, makes it unlawful for any person to willfully make any false, fictitious, or fraudulent statement or representation, or make or use any false writing or document knowing the same to contain a false, fictitious or fraudulent statement or entry, to a registered entity, board of trade or futures association designated or registered under the Act acting in furtherance of its official duties under the Act.

42.     From at least October 2008, Defendants BCLP and Weddington violated Section 9(a)(4) of the Act, 7 U.S.C. § 13(a)(4), by, among other acts and practices, knowingly or with reckless disregard for the truth, filing a false notice of CTA exemption with the NFA, the registered futures association designated to administer Commission registrations.  Such exemption was false at the time of filing and remained false until BCLP became registered with the Commission beginning in October 2011 and Weddington became registered as an AP of BCLP in January 2012.

43.     Weddington controlled BCLP and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting BCLP's violations alleged in this count.  Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Weddington is thereby liable for BCLLC and BCLP's violations of Section 9(a)(4) of the Act, 7 U.S.C. § 13(a)(4).

44.     The foregoing acts, misrepresentations, omissions, and failures of Defendant Weddington described in this Count occurred within the scope of his employment with Defendants BCLP.  Therefore, BCLP is liable for these acts in violation of the Act, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2.

45.     Each false exemption filing made during the relevant period including, but not limited to, those specifically alleged herein, is alleged as a separate and distinct violation of Section 9(a)(4) of the Act, 7 U.S.C. § 13(a)(4).

## COUNT II

### VIOLATIONS OF SECTION 4m(1) OF THE ACT:
**Operating As Unregistered CTAs**

46.     The allegations set forth in paragraphs 1 through 39 are re-alleged and incorporated herein.

47.    Section 4m(1) of the Act, 7 U.S.C. § 6m(1), makes it unlawful for any CTA to make use of the mails or any means of the instrumentalities of interstate commerce in connection with its business as a CTA unless registered under the Act.

48.    From at least October 2008, BCLP and Weddington, acting within the scope of his employment with BCLP, made use of the mails or any means or instrumentality of interstate commerce in connection with BCLP's business as a CTA, in that for compensation or profit, they engaged in the business of advising others either directly or through publications, writings or electronic media, as to the value or the advisability of trading in any contract of sale of a commodity for future delivery made or to be made on or subject to the rules of a contract market or derivatives transaction execution facility, or for compensation or profit, and as part of a regular business, issued or promulgated analyses or reports concerning any of the activities referred to above, without benefit of Commission registration.  Defendant BCLP operated as an unregistered CTA in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1), until BCLP registered with the Commission in October 2011.

49.    Weddington controlled BCLP and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting BCLP's violations alleged in this count.  Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Weddington is thereby liable for BCLP's violations of Section 4m(1) of the Act, 7 U.S.C. § 6m(1).

50.    The foregoing acts, misrepresentations, omissions, and failures of Defendant Weddington described in this Count occurred within the scope of his employment with Defendant BCLP.  Therefore, BCLP is liable for these acts in violation of the Act, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2.

51.     Each act of operating as an unregistered CTA made during the relevant period including, but not limited to, those specifically alleged herein, is alleged as a separate and distinct violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1).

## COUNT III

### VIOLATIONS OF SECTION 4b(a)(1)(A) and (C) OF THE ACT
### Fraud and Attempted Fraud by Any Person

52.     The allegations set forth in paragraphs 1 through 39 are re-alleged and incorporated herein.

53.     Section 4b(a)(1)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(1)(A) and (C), makes it unlawful for any person in or in connection with any order to make or the making of any futures contract to cheat, defraud or willfully deceived, or attempt to cheat, defraud or willfully deceive any other person by any means whatsoever.

54.     From at least February 2010, Defendants cheated or defrauded, or attempted to cheat or defraud, and willfully deceived or attempted to deceive participants and prospective participants in violation Section 4b(a)(1)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(1)(A) and (C) by among other acts and practices, creating false and misleading performance and other financial records that contained non-existent futures trading profits, making material misrepresentations and omitting material facts in Pennoyer Fund promotional and marketing material, including but not limited to, representations that the Pennoyer Fund was making profits, when in fact it was not, failing to disclose trading losses, failing to disclose hypothetical trading and falsely presenting such hypothetical trading as actual trading.  Defendants made these material misrepresentations and omitted these material facts knowingly or with a reckless disregard to their truth or falsity.

14

55.     Each material misrepresentation or omission, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Sections 4b(a)(1)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(1)(A) and (C).

56.     Weddington controlled BCLLC and BCLP and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting BCLP's violations alleged in this count.  Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Weddington is thereby liable for BCLLC and BCLP's violations of Section 4b(a)(1)(A) and (C) of the Act.

57.     The foregoing acts, misrepresentations, omissions, and failures of Defendant Weddington described in this Count occurred within the scope of his employment with Defendants BCLLC and BCLP.  Therefore, BCLLC and BCLP are liable for these acts in violation of the Act, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2.

## COUNT IV

### VIOLATIONS OF SECTION 4o(1)(A) and (B) OF THE ACT:
### Fraud and Deceptive Acts and Practices Upon Participants and
### Prospective Participants as a CTA and CPO

58.     The allegations set forth in paragraphs 1 through 39 are re-alleged and incorporated herein.

59.     Section 4o(1)(A) and (B) of the Act, 7 U.S.C. § 6o(1)(A) and (B) makes it unlawful for a CTA or CPO to make use of the mails or any means of the instrumentalities of interstate commerce in connection directly or indirectly to employ any device, scheme, or artifice to defraud any participant or prospective participant or to engage in any transaction or course of business which operates as a fraud or deceit upon any  participant or prospective participant.

.

60.     From at least February 2010 until January 2012, Defendants BCLLC and BCLP

violated Section 4*o*(1)(A) and(B) of the Act, 7 U.S.C. § 6*o*(1)(A) and(B), by among other acts

and practices, while acting as CTAs and CPOs, and by use of the mails or any means or

instrumentality of interstate commerce, they directly or indirectly employed a device, scheme, or

artifice to defraud any client or participant or prospective client or participant, or have engaged

in transactions, practices or a course of business which operated as a fraud or deceit upon such

persons.  The devices, schemes, artifices, transactions, practices or courses of business included,

but were not limited to, knowingly or with reckless disregard for the truth, creating false and

misleading performance and other financial records that contained non-existent futures trading

profits, making material misrepresentations and omitting material facts in Pennoyer Fund

promotional and marketing material, including but not limited to, representations that the Pennoyer

Fund was making profits, when in fact it was not, failing to disclose trading losses, failing to

disclose hypothetical trading and falsely presenting such hypothetical trading as real.

61.     Weddington controlled BCLLC and BCLP and did not act in good faith or

knowingly induced, directly or indirectly, the acts constituting BCLLC and BCLP's violations

alleged in this count.  Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Weddington is

thereby liable for and BCLP's violations of Section 4*o*(1)(A) and (B) of the Act, 7 U.S.C.

§ 6*o*(1)(A) and (B)  and Commission Regulation 4.41(b), 17 C.F.R. § 4.41(b).

62.     The foregoing acts, misrepresentations, omissions, and failures of Defendant

Weddington described in this Count occurred within the scope of his employment with

Defendants BCLLC and BCLP.  Therefore, BCLLC and BCLP are liable for these acts in

violation of the Act, pursuant to Section 2(a)(1)(B) of the Act, to be codified at 7 U.S.C.

§ 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2.

63.     Each act of directly or indirectly employing a device, scheme, or artifice to defraud any client or participant or prospective client or participant, or engaging in transactions, practices or a course of business which operated as a fraud or deceit upon such persons including, but not limited to, those specifically alleged herein, is alleged as a separate and distinct violation of Section 4o(1)(A) and (B) of the Act, 7 U.S.C. § 6o(1)(A) and (B).

## COUNT V

### VIOLATIONS OF COMMISSION REGULATIONS 4.41(b):
#### Failure to Disclose Hypothetical Trading

64.     The allegations set forth in paragraphs 1 through 39 are re-alleged and incorporated herein.

65.     Commission Regulations 4.41 (b), 17 C.F.R § 4.41 (b), prohibits any person from presenting the performance of any simulated or hypothetical commodity interest account, transaction in a commodity interest or series of transactions in a commodity interest of a commodity pool operator or commodity trading advisor, or any principal thereof unless such performance is accompanied the hypothetical disclaimer contained in Commission Regulation 4.41(b), 17 C.F.R. §4.41(b).

66.     By presenting simulated or hypothetical performance results to participants and prospective participants in performance and financial records and  promotional and marketing material without the hypothetical disclaimer contained in the Commission Regulation 4.41(b), Defendants violated Commission Regulation 4.41(b), 17 C.F.R. § 4.41(b ).

67.     Weddington controlled BCLLC and BCLP and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting BCLLC and BCLP's violations alleged in this count.  Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Weddington is

thereby liable for BCLLC and BCLP's violations of Commission Regulation 4.41(b), 17 C.F.R. § 4.41(b).

68.     The foregoing acts, misrepresentations, omissions, and failures of Defendant Weddington described in this Count occurred within the scope of his employment with Defendants BCLLC and BCLP.  Therefore, BCLLC and BCLP are liable for these acts in violation of the Act, pursuant to Section 2(a)(1)(B) of the Act, to be codified at 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2.

69.     Each act of failing to include a hypothetical disclaimer in the presentation of the performance of any simulated or hypothetical commodity interest account, transaction in a commodity interest or series of transactions in a commodity interest including, but not limited to, those specifically alleged herein, is alleged as a separate and distinct violation of Commission Regulation 4.41(b), 17 C.F.R. § 4.41(b).

## VI.   RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1, and pursuant to its own equitable powers, enter:

A.     An order finding that:

1.   Defendants BCLLC, BCLP and Weddington violated Section 4b(a)(1)(A) and (C) of the Act, 7 U.S.C § 6b(a)(1)(A) and (C);

2.   Defendants BCLP and Weddington violated Section 9(a)(4) of the Act, 7 U.S.C. § 13(a)(4);

3.   Defendants BCLP and Weddington violated Section 4m(1) of the Act, 7 U.S.C. § 6m(1);

    4.  Defendants BCLLC, BCLP and Weddington violated Section 4*o*(1)(A) and (B) of the Act, 7 U.S.C. § 6*o*(1)(A) and (B);

    5.  Defendants BCLLC, BCLP and Weddington violated Commission Regulation 4.41(b), 17 C.F.R § 4.41 (b);

B.    An order of permanent injunction prohibiting Defendants BCLP and Weddington and any other person or entity associated with them, from, directly or indirectly, engaging in conduct in violations from violating Sections 4m(1) and 9a(4) of the Act, and prohibiting Defendants BCLLC, BCLP and Weddington and any other person or entity associated with them, from, directly or indirectly, engaging in conduct in violation of Sections 4b and 4*o* of the Act, and Commission Regulation 4.41 (b);

C.    An order of permanent injunction prohibiting Defendants and any successors from, directly or indirectly:

    1.  Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a of the Act, as amended), 7 U.S.C. § 1a;

    2.  Entering into commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 32.1(b)(1)), 17 C.F.R. § 32.1(b)(1) (2012)) ("commodity options"), security futures products, swaps (as that term is defined in Section 1a(47) of the Act, as amended, and as further defined by Commission Regulation 1.3(xxx), 17 C.F.R. § 1.3(xxx)) ("swaps"), and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, as amended, 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex contracts"), for their own personal

accounts or for any accounts in or over which they have a direct or indirect interest;

3. Having any commodity futures, options on commodity futures, commodity options, security futures products, swaps, and/or forex contracts traded or executed on their behalf;

4. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, security futures products, swaps, and/or forex contracts;

5. Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling of any commodity futures, options on commodity futures, commodity options, security futures products, swaps, and/or forex contracts;

6. Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2012); and

7. Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2012)), agent, or any other officer or employee of any person registered, exempted from registration or required to be registered with the CFTC except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9).

D.  Enter an order requiring that Defendants, as well as any of their successors, disgorge to any officer appointed or directed by the Court all benefits received including, but not limited to, salaries, commissions, loans, fees, revenues and trading profits derived, directly or indirectly, from acts or practices that constitute violations of the Act, as amended, and the Regulations, including pre and post-judgment interest;

E.  Enter an order requiring Defendants, as well as any of their successors, to make full restitution, pursuant to such procedure as the Court may order, to every person or entity whose funds were received or utilized by them in violation of the provisions of the Act and/or Commission Regulations, as described herein, plus pre-judgment interest thereon from the date of such violations, plus post-judgment interest;

F.  Enter an order directing Defendants and any of their successors, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between Defendants and any customers whose funds were received by them as a result of the acts and practices, which constituted violations of the Act, as amended, and the Regulations as described herein;

G.  Enter an order assessing a civil monetary penalty against Defendants and any successors thereof, in the amount of the higher of $130,000 for each violation of the Act or Regulations committed or triple the monetary gain to Defendants for each violation of the Act or Regulations described herein occurring before October 23, 2008, and a civil monetary penalty in the amount of the higher of

$140,000 for each violation of the Act or Regulations committed or triple the monetary gain to Defendants for each violation of the Act or Regulations described herein occurring on or after October 23, 2008, plus post-judgment interest;

H.   An order requiring Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2); and

I.   An Order providing such other and further relief as this Court may deem necessary and appropriate under the circumstances.

Date: <u>April 18, 2014</u>                    Respectfully submitted,

U.S. COMMODITY FUTURES
TRADING COMMISSION
525 West Monroe Street, Suite 1100
Chicago, Il. 60661

Camille M. Arnold
Senior Trial Attorney
(312) 596-0524
(312) 596-0714 (facsimile)
carnold@cftc.gov
NY Bar No. A2505907

Joseph A. Konizeski
Chief Trial Attorney
(312) 596-0546
(312) 596-0714 (facsimile)
jkonizeski@cftc.gov
*Pro Hac Vice Pending*

Scott Williamson
Deputy Regional Counsel
(312) 596-0560

(312) 596-0714 (facsimile)
swilliamson@cftc.gov
*Pro Hac Vice Pending*