McMahon, C.

IN THE UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| USDC SDNY | |
| DOCUMENT | |
| ELECTRONICALLY FILED | |
| DOC #: | |
| DATE FILED: 8/4/15 | |

U.S. COMMODITY FUTURES          )
TRADING COMMISSION               )     Civil No. 14-CV-2800
                                               )
          Plaintiff,                        )
                                               )
     vs.                                     )
                                               )
BRUNSWICK CAPITAL LLC,     )     **Hon. C. McMahon**
BRUNSWICK CAPITAL PARTNERS LP  )     **Mag. K. Fox**
     -and-                                  )
WAYNE P. WEDDINGTON III,   )
                                               )
                                               )
                                               )
          Defendants.                    )
_____)

## CONSENT ORDER FOR PERMANENT INJUNCTION, CIVIL MONETARY PENALTY AND OTHER EQUITABLE RELIEF

### I.
### INTRODUCTION

On April 18, 2014, Plaintiff Commodity Futures Trading Commission ("Commission" or

"CFTC") filed a Complaint ("Complaint") against Defendants Brunswick Capital LLC

("BCLLC"), Brunswick Capital Partners LP ("BCLP") and Wayne P. Weddington III

(collectively "Defendants") seeking injunctive and other equitable relief, as well as the

imposition of civil penalties, for violations of the Commodity Exchange Act ("CEA" or "Act"), 7

U.S.C. §§ 1 et seq. (2012), and the Commission's Regulations ("Regulations") promulgated

thereunder, 17 C.F.R. §§ 1.1 et seq. (2014). Specifically, the CFTC's Complaint alleged that

Defendants violated Sections 4b(a)(1)(A) and (C) and 4o(1)(A) and (B), 7 U.S.C. §§ 6b(a)(1)(A)

and (C) and 6o(1)(A) and (B), and Commission Regulation 4.41(b), 17 C.F.R. § 4.41(b) (2014),

and that Defendants BCLP and Weddington also violated Sections 4m(1) and 9(a)(4) of the Act, 7 U.S.C. §§ 6m(1) and 13(a)(4).

In December 2014, Plaintiff filed an Amended Complaint which, among other things, added allegations of misappropriation of pool participant funds to the Section 4b(a)(1)(A) and (C), 7 U.S.C. § 6b(a)(1)(A) and (C) charges, and adding allegations of issuing false monthly statements to a pool participant in violation of Section 4b(a)(1)(B), 7 U.S.C. § 6b(a)(1)(B).

## II. CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Complaint against Defendants without a trial on the merits or any further judicial proceedings, Defendants:

1.    Consent to the entry of this Consent Order for Permanent Injunction, Civil Monetary Penalty and Other Equitable Relief ("Consent Order");

2.    Affirm that they have read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce consent to this Consent Order;

3.    Acknowledge service of the summons and Complaint;

4.    Admit the jurisdiction of this Court over them and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012);

5.    Admit the jurisdiction of the Commission over the conduct and transactions at issue in this action pursuant to the Act, 7 U.S.C. §§ 1, *et seq.* (2012);

6.    Admit that venue properly lies with this Court pursuant to Section 6c(e) of the Act, amended, 7 U.S.C. § 13a-1(e) (2012);

7.    Waive:

(a)     any and all claims that they may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2012) and 28 U.S.C. § 2412 (2012), and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. §§ 148.1 et seq., relating to, or arising from, this action;

(b)     any and all claims that they may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, §§ 201-253, 110 Stat. 847, 857-868 (1996), as amended by Pub. L. No. 110-28, § 8302, 121 Stat. 112, 204-205 (2007), relating to, or arising from, this action;

(c)     any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

(d)     any and all rights of appeal from this action;

8.     Consent to the continued jurisdiction of this Court over them for the purpose of implementing and enforcing the terms and conditions of this Consent Order and for any other purpose relevant to this action, even if Defendants now or in the future reside outside the jurisdiction of this Court;

9.     Agree that they will not oppose enforcement of this Consent Order by alleging that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and waives any objection based thereon;

10.     Agree that neither they, nor any of their agents or employees under their authority or control, shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or the Findings of Fact or Conclusions of Law in this Consent Order, or creating or tending to create the impression that the Complaint and/or this Consent Order is

without a factual basis; provided, however, that nothing in this provision shall affect their: (a) testimonial obligations, or (b) right to take legal positions in other proceedings to which the Commission is not a party. Defendants shall undertake all steps necessary to ensure that all of their agents and/or employees under their authority or control understand and comply with this agreement;

11.     By consenting to the entry of this Consent Order, Defendants neither admit nor deny the findings made in this Consent Order and all of the allegations in the Complaint, except as to jurisdiction and venue, which they admit. Further, Defendants agree and intend that the allegations contained in the Complaint and all of the Findings of Fact and Conclusions of Law contained in this Consent Order shall be taken as true and correct and be given preclusive effect, without further proof, in the course of: (a) any current or subsequent bankruptcy proceeding filed by, on behalf of, or against Defendant; (b) any proceeding pursuant to Section 8a of the Act, 7 U.S.C. § 12a, and/or Part 3 of the Regulations, 17 C.F.R. §§ 3.1 et seq.; and/or (c) any proceeding to enforce the terms of this Consent Order. Defendants do not consent to the use of this Consent Order, or the Findings of Fact and Conclusions of Law in this Consent Order, as the sole basis for any other proceeding brought by the Commission;

12.     Agree to provide immediate notice to this Court and the Commission by certified mail, in the manner required by paragraph 87 of Part V of this Consent Order, of any bankruptcy proceeding filed by, on behalf of, or against them, whether inside or outside the United States; and,

13.     Agree that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against Defendants in any other proceeding.

### III. FINDINGS AND CONCLUSIONS

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay. The Court therefore directs the entry of the following Findings of Fact, Conclusions of Law, permanent injunction and equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, as set forth herein. The findings and conclusions in this Consent Order are not binding on any other party to this action.

**THE PARTIES AGREE AND THE COURT HEREBY FINDS:**

**A.    FINDINGS OF FACT**

**1.    Parties**

14.    Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act, 7 U.S.C. §§ 1 et seq., and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 et seq.

15.    Brunswick Capital LLC is a Connecticut limited liability corporation with its principal place of business in New Canaan, Connecticut. Weddington became BCLLC's managing member and BCLLC served as the CPO for the Pennoyer Fund. BCLLC has never been registered with the Commission in any capacity.

16.    Brunswick Capital Partners LP is a Delaware limited partnership with its principal place of business in New York, New York. Weddington formed BCLP in 2007. Weddington became BCLP's managing partner and president and BCLP served as the advisor to the Pennoyer Fund. From its inception until October 2011, BCLP was not registered with the Commission. BCLP became registered with the Commission as a CTA in October 2011 and is currently registered in that capacity.

17.    **Wayne Pennoyer Weddington III** is a resident of New York, New York. Weddington is BCLLC's managing member. Weddington also formed BCLP and is its

managing partner and president. Weddington was not registered with the Commission until January 2012. Weddington became registered with the Commission as an associated person ("AP") of BCLP and is currently registered in that capacity.

**2.    Defendants' False Exemption and Unregistered CTA Activity**

18.    Defendants formed the Pennoyer Fund in approximately 2007, and installed BCLLC as the fund's CPO and BCLP as the fund's advisor. Weddington served as BCLLC's managing member and BCLP's general partner and president. Defendants were entitled to compensation from the Pennoyer Fund in the form of management or incentive fees. BCLP, by and through Weddington, solicited investments from numerous prospective pool participants. BCLP, by and through Weddington, also distributed promotional materials containing purported profits generated from successful commodity trading to the public and prospective pool participants.

19.    Between October and December 2008, the Defendants solicited and accepted approximately $1.35 million from outside investors for interests in the pool, which ultimately traded E-mini S&P 500 futures contracts and other e-mini index products offered on the Chicago Mercantile Exchange, Inc. ("CME").

20.    CPOs and CTAs must electronically file with NFA all notices of exclusion or exemption from the Commission's registration requirements.

21.    In October 2008, before commencing trading in the pool, Weddington, on behalf of BCLLC, filed a notice of exemption under Commission Regulation 4.13(a)(4), 17 C.F.R. § 4.13(a)(4), for BCLLC to operate as an exempt CPO.

22.    At the same time, Weddington, on behalf of BCLP, filed a notice of exemption under Commission Regulation 4.14(a)(8) for BCLP to act as an exempt CTA to advise and trade the Pennoyer Fund without benefit of Commission registration. Commission Regulation

4.14(a)(8), 17 C.F.R. § 4.14(a)(8), provides that a person is not required to register as a CTA if (1) the advisor is already registered as an investment adviser under the IAA, registered with a state securities regulatory agency, or excluded from the definition of an IAA; and, (2) the commodity trading advice given is solely incidental to the advisor's business of providing securities or other investment advice.

23.     The notice of exemption Defendants Weddington and BCLP filed for BCLP under Regulation 4.14 was inaccurate for two reasons. First, neither BCLP nor Weddington was registered under the IAA during the relevant period, nor were they excluded from the definition of the term IAA. Second, Defendants' commodity trading advice was not solely incidental to providing securities or other investment advice to the Pennoyer Fund.

24.     Defendants' filing of an inaccurate notice of exemption was willful. Weddington and BCLP knew that they were not registered under the IAA because they never sought such registration. Further, Weddington and BCLP knew that the commodity trading advice BCLP provided was not merely incidental to the operation of the Pennoyer Fund because Weddington and BCLP opened and funded the Pennoyer Fund's futures trading accounts and because the $1.35 million Defendants traded in E-mini S&P 500 futures contracts from October 2008 through July 2009 made up the overwhelming majority of the funds in the Pennoyer Fund.

25.     The exemption claimed by Weddington and BCLP  remained inaccurate until BCLP registered with the Commission as a CTA in October 2011, and Weddington became registered as an AP of BCLP in January 2012.

26.     BCLP acted as a CTA and Weddington acted as an associated person of a CTA throughout the relevant period by soliciting funds from participants and prospective participants to trade in E-mini S&P 500 futures contracts in the Pennoyer Fund, and advised others directly

or indirectly or through publications, writings or electronic media as to the value or the advisability of trading in commodity futures or options contracts.

### 3. Defendants' Fraudulent Solicitation of Pool Participant Funds and Falsified Trading Results

27. By July 2009, the Pennoyer Fund had lost approximately 30% of its value through, among other things, trading losses. Defendants returned some of the remaining funds to some of the pool participants.

28. In December 2008, Participant A, a 62 year old resident of Willow, New York, wired $250,000 to a Pennoyer Fund account that Weddington controlled. By December 31, 2010, due to market losses from Defendants' trading, Participant A's investment had been reduced to $190, 837.

29. For several months between January 2010 to December 2010, Defendants issued or caused to be issued via email to Participant A false monthly statements that misrepresented the fund's profits and losses.

30. Weddington led Participant A to believe that he had the ability to redeem her funds and led her to believe that her funds were safe and secure by, among other statements, assuring her in the same e-mail that, in response a specific question she posed, her funds were not directly exposed to markets and an annual dividend of not less than 4% would be paid to her. Weddington engaged in this type of communication with Participant A until at least March 2014, when he sent her an e-mail offering her a promissory note in which he would not return her funds to her until 2017.

31. Participant A requested return of her funds from Defendants in approximately July 2012. From that time until at least March 2014, in a series of e-mails and telephone calls, Weddington repeatedly told Participant A that he would return her funds but never did so.

-8-

32.     Further, after July 2009, Defendants solicited new fund participants and prospective participants via email, telephone and other means or instrumentalities of interstate commerce. In the course of soliciting these new participants and prospective participants, Defendants made material misrepresentations, omitted material facts and engaged in deceptive acts and practices in attempts to defraud the participants and prospective participants. For example, Defendants created false performance and financial records and promotional material that they used from at least February 2010 to July 2011, in which they falsely claimed that an algorithmic trading system Weddington had developed called "SysMacro" to trade E-mini S&P 500 futures contracts made profits nearly every month and over 30% in one year.

33.     Additionally, some of the trading Defendants used to create the false performance records purportedly took place in a hypothetical trading account. Defendants failed to disclose to new participants or prospective participants that some of the trading results contained in the performance records were hypothetical and instead presented the results in promotional and marketing material as actual trading results.

34.     Defendants hired marketing managers to assist soliciting the new participants and prospective participants, and provided the marketing managers with promotional material containing false performance records.. Defendants intended that the marketing managers use the false performance records and false promotional material to solicit prospective participants and knew or recklessly disregarded that the marketing managers were presenting false and misleading promotional material to prospective participants.

35.     In or about October 2010, Defendants solicited and obtained approximately $500,000 from a participant to trade in the Pennoyer Fund. Defendants lost at least $30,000 of the participant's funds within two to three months. Defendants, knowing these losses occurred,

continued to claim to prospective participants that their trading of the Pennoyer Fund was
profitable.

36.     In or about March 2011, utilizing email, telephone or other instrumentalities of
interstate commerce, Defendants set up and attended meetings with a major financial services
company in attempts to obtain trading funds.  Defendants used the false performance records and
undisclosed purported hypothetical trading results to solicit the financial services company.
Further, Defendants falsely inflated the Pennoyer Fund's assets in a financial prospectus they
provided to the financial services company, claiming that the Pennoyer Fund had between one
and three million dollars in assets under management, when, in fact, the Pennoyer Fund at that
time had approximately $270,000.

37.     In or about August 2011, Defendants, through their marketing managers, solicited
and obtained approximately $1,000,000 from another participant which was sent by bank wire,
an instrumentality of interstate commerce.  Shortly thereafter, Defendants had to return the funds
to the participant when the participant learned that Defendants did not have the trading success
represented in their promotional materials.

38.     During the relevant period, Weddington at all times controlled and acted on
behalf of BCLLC, BCLP and the Pennoyer Fund.  For example, Weddington opened and signed
on behalf of both BCLLC and BCLP all of the account agreements necessary to open and trade
the Pennoyer Fund futures accounts, signed corporate documents assigning BCLLC and BCLP
as the Pennoyer Fund's operator and advisor.  Weddington also created the false Pennoyer Fund
performance records and the false promotional materials, and hired the marketing managers and
armed them with the false promotional materials to solicit participants and prospective
participants.

39.     Weddington's primary professional activity still involves financial consulting and acting as a private equity advisor/financing.

**B.    CONCLUSIONS OF LAW**

**1.    Jurisdiction and Venue**

40.     This Court has jurisdiction over this action pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a), which provides that whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of the Act or any rule, regulation, or order promulgated thereunder, the Commission may bring an action in the proper district court of the United States against such person to enjoin such act or practice, or to enforce compliance with the Act, or any rule, regulation or order thereunder.

41.     Venue properly lies with the Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), because Defendants reside and/or maintain an office in this jurisdiction and the acts, practices in violation of the Act occurred within this District.

**2.    Defendants BCLP and Weddington Violated Section 9(a)(4) of the Act, 7 U.S.C. §13(a)(4), By Seeking An Exemption Based Upon False Information**

42.     Section 9(a)(4) of the Act, 7 U.S.C. §13, in relevant part, makes it unlawful for any person to willfully make any false, fictitious, or fraudulent statement or representation, or make or use any false writing or document knowing the same to contain a false, fictitious or fraudulent statement or entry, to a registered entity, board of trade or futures association designated or registered under the Act acting in furtherance of its official duties under the Act.

43.     As described in paragraphs 18-25 above, from least October 2008, Defendants BCLP and Weddington violated Section 9(a)(4) of the Act, 7 U.S.C. § 13(a)(4), by willfully filing a false notice of CTA exemption with NFA, the registered futures association designated to

administer Commission registrations. Such exemption was false at the time of filing and remained false until BCLP became registered with the Commission beginning in October 2011 and Weddington became registered as an AP of BCLP in January 2012.

44.     Weddington controlled BCLP and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting BCLP's violations alleged in this count. Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Weddington is thereby liable for BCLLC and BCLP's violations of Section 9(a)(4) of the Act, 7 U.S.C. § 13(a)(4).

45.     The foregoing acts, misrepresentations, omissions, and failures of Defendant Weddington occurred within the scope of his employment with Defendant BCLP. Therefore, BCLP is liable for these acts in violation of the Act, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2.

46.     Each false exemption filing made during the relevant period is a separate and distinct violation of Section 9(a)(4) of the Act, 7 U.S.C. § 13(a)(4).

### 3.     Defendants BCLP and Weddington Violated Section 4m(1) of the Act, 7 U.S.C. § 6m(1), By Acting as Unregistered CTAs

47.     Section 4m(1) of the Act, 7 U.S.C. § 6m(1), makes it unlawful for any CTA to make use of the mails or any means of the instrumentalities of interstate commerce in connection with its business as a CTA unless registered under the Act.

48.     As described in paragraph 26 above, from at least October 2008, BCLP and Weddington, acting within the scope of his employment with BCLP, made use of the mails or any means or instrumentality of interstate commerce in connection with BCLP's business as a CTA, in that for compensation or profit, they engaged in the business of advising others either directly or through publications, writings or electronic media, as to the value or the advisability of trading in any contract of sale of a commodity for future delivery made or to be made on or

subject to the rules of a contract market or derivatives transaction execution facility, or for compensation or profit, and as part of a regular business, issued or promulgated analyses or reports concerning any of the activities referred to above, without benefit of Commission registration. Defendant BCLP operated as an unregistered CTA in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1), until BCLP registered with the Commission in October 2011.

49.     Weddington controlled BCLP and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting BCLP's violations alleged in this count. Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Weddington is thereby liable for BCLP's violations of Section 4m(1) of the Act, 7 U.S.C. § 6m(1).

50.     The foregoing acts, misrepresentations, omissions, and failures of Defendant Weddington described in this Count occurred within the scope of his employment with Defendant BCLP. Therefore, BCLP is liable for these acts in violation of the Act, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2, separate and distinct violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1).

### 4.     Defendants Defrauded Pool Participants and Attempted to Defraud Prospective Pool Participants in Violation of Sections 4b(a)(1)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(1)(A) and (C)

51.     Sections 4b(a)(1)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(1)(A) and (C), makes it unlawful for any person in or in connection with any order to make or the making of any futures contract to cheat, defraud or willfully deceived, or attempt to cheat, defraud or willfully deceive any other person by any means whatsoever.

52.     As described in paragraphs 19 and 27 to 38 above, from at least January 2008 to the present, Defendants have cheated or defrauded, or attempted to cheat or defraud, and willfully deceived or attempted to deceive pool participants and prospective participants in violation Sections 4b(a)(1)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(1)(A) and (C) by creating and

disseminating false and misleading performance and other financial records that contained non-existent futures trading profits, making material misrepresentations and omitting material facts in Pennoyer Fund promotional and marketing materials, including but not limited to, representations that the Pennoyer Fund was making profits when in fact it was not, failing to disclose trading losses, misappropriating pool participants' funds, failing to disclose hypothetical trading and falsely presenting such hypothetical trading as actual trading. Defendants made these material misrepresentations, omitted these material facts, and misappropriated pool participants' funds knowingly or with a reckless disregard to their truth or falsity.

53.     Each material misrepresentation or omission, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Sections 4b(a)(1)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(1)(A) and (C).

54.     Weddington controlled BCLLC and BCLP and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting BCLP's violations alleged in this count. Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Weddington is thereby liable for BCLLC and BCLP's violations of Sections 4b(a)(1)(A) and (C) of the Act.

55.     The foregoing acts, misrepresentations, omissions, and failures of Defendant Weddington described in this Count occurred within the scope of his employment with Defendants BCLLC and BCLP. Therefore, BCLLC and BCLP are liable for these acts in violation of the Act, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R.§ 1.2.

   **5.     Defendants Issued False Monthly Statements, In Violation of Section 4b(a)(1)(B) of the Act, 7 U.S.C. § 4b(a)(1)(B)**

56.     Section 4b(a)(1)(B) of the Act, 7 U.S.C. § 4b(a)(1)(B), in pertinent part, makes it unlawful for any person in or in connection with any order to make or the making of any futures contract, to willfully make or cause to be made to any other person any false report or statement.

57.     As described in paragraphs 28-29 above, from at least January 2010 to the present, Defendants violated Section 4b(a)(1)(B) of the Act, 7 U.S.C. § 6b(a)(1)(B), by among other acts and practices, knowingly or recklessly issuing or causing to be issued to at least one Pennoyer pool participant false monthly statements that misrepresented the fund's profits and losses by among other things, showing profits when Defendants were sustaining losses in the fund.

58.     Weddington controlled BCLLC and BCLP and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting BCLLC and BCLP's violations alleged in this count. Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Weddington is liable for and BCLP's violations of Section 4b(a)(1)(B) of the Act, 7 U.S.C. § 6b(a)(1)(B).

59.     The foregoing acts, misrepresentations, omissions, and failures of Defendant Weddington described in this Count occurred within the scope of his employment with Defendants BCLLC and BCLP. Therefore, BCLLC and BCLP are liable for these acts in violation of the Act, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2.

60.     Each act of issuing or causing to be issued to pool participants false monthly statements is a separate and distinct violation of Section 4b(a)(1)(B) of the Act, 7 U.S.C. § 6b(a)(1)(B).

**6.     Defendants Engaged in Fraud and Deceptive Practices As a CTA and CPO In Violation of Sections 4o(1)(A) and (B) of the Act, 7 U.S.C. § 6o(1)(A) and (B)**

61.     Sections 4o(1)(A) and (B) of the Act, 7 U.S.C. § 6o(1)(A) and (B) make it unlawful for a CTA or CPO to make use of the mails or any means of the instrumentalities of interstate commerce in connection directly or indirectly to employ any device, scheme, or artifice to defraud any participant or prospective participant or to engage in any transaction or course of business which operates as a fraud or deceit upon any participant or prospective participant.

62.     As described in paragraphs 27 to 38 above, from at least February 2010 until the present, Defendants BCLLC and BCLP violated Sections 4o(1)(A) and(B) of the Act, 7 U.S.C. § 6o(1)(A) and(B), by among other acts and practices, while acting as CTAs and CPOs, and by use of the mails or any means or instrumentality of interstate commerce, they directly or indirectly employed a device, scheme, or artifice to defraud any client or participant or prospective client or participant, or have engaged in transactions, practices or a course of business which operated as a fraud or deceit upon such persons. The devices, schemes, artifices, transactions, practices or courses of business included, but were not limited to, knowingly or with reckless disregard for the truth, creating false and misleading performance and other financial records that contained non-existent futures trading profits, making material misrepresentations and omitting material facts in Pennoyer Fund promotional and marketing materials, including but not limited to, representations that the Pennoyer Fund was making profits, when in fact it was not, failing to disclose trading losses, misappropriating pool participant funds, issuing false statements to pool participants, failing to disclose hypothetical trading and falsely presenting such hypothetical trading as real.

63.     Weddington controlled BCLLC and BCLP and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting BCLLC and BCLP's violations alleged in this count. Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Weddington is

thereby liable for and BCLP's violations of Sections 4o(1)(A) and (B) of the Act, 7 U.S.C. §
6o(1)(A) and (B) and Commission Regulation 4.41(b), 17 C.F.R. § 4.41(b).

      64.     The foregoing acts, misrepresentations, omissions, and failures of Defendant
Weddington described in this Count occurred within the scope of his employment with
Defendants BCLLC and BCLP.  Therefore, BCLLC and BCLP are liable for these acts in
violation of the Act, pursuant to Section 2(a)(1)(B) of the Act, to be codified at 7 U.S.C.
§ 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2.

      65.     Each act of directly or indirectly employing a device, scheme, or artifice to
defraud any client or participant or prospective client or participant, or engaging in transactions,
practices or a course of business which operated as a fraud or deceit upon such persons is a
separate and distinct violation of Sections 4o(1)(A) and (B) of the Act, 7 U.S.C. § 6o(1)(A) and
(B).

      **7.**     **Defendants Failed to Disclose Purported Hypothetical Trading And
Presented Such Trading As Real Trading, In Violation of Commission
Regulation 4.41 (b), 17 C.F.R § 4.41 (b)**

      66.     Commission Regulation 4.41 (b), 17 C.F.R § 4.41 (b), prohibits any person from
presenting the performance of any simulated or hypothetical commodity interest account,
transaction in a commodity interest or series of transactions in a commodity interest of a
commodity pool operator or commodity trading advisor, or any principal thereof unless such
performance is accompanied the hypothetical disclaimer contained in Commission Regulation
4.41(b), 17 C.F.R. §4.41(b).

      67.     By presenting simulated or hypothetical performance results to participants and
prospective participants in performance and financial records and promotional and marketing
material without the hypothetical disclaimer contained in the Commission Regulation 4.41(b),
Defendants violated Commission Regulation 4.41(b), 17 C.F.R. § 4.41(b ).

68.    Weddington controlled BCLLC and BCLP and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting BCLLC and BCLP's violations alleged in this count. Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Weddington is thereby liable for BCLLC and BCLP's violations of Commission Regulation 4.41(b), 17 C.F.R. § 4.41(b).

69.    The foregoing acts, misrepresentations, omissions, and failures of Defendant Weddington described in this Count occurred within the scope of his employment with Defendants BCLLC and BCLP. Therefore, BCLLC and BCLP are liable for these acts in violation of the Act, pursuant to Section 2(a)(1)(B) of the Act, to be codified at 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2.

70.    Each act of failing to include a hypothetical disclaimer in the presentation of the performance of any simulated or hypothetical commodity interest account, transaction in a commodity interest or series of transactions in a commodity interest is a separate and distinct violation of Commission Regulation 4.41(b), 17 C.F.R. § 4.41(b).

**8.    Permanent Injunctive Relief is Necessary and Appropriate**

71.    Unless restrained and enjoined by this Court, there is a reasonable likelihood that Defendants will continue to engage in the acts and practices alleged in the Complaint and Amended Complaint, and in similar acts and practices in violation of the Act and Regulations.

### IV. PERMANENT INJUNCTION

### IT IS HEREBY ORDERED THAT:

72.    Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1:

a.    Defendants BCLLC, BCLP and Weddington are permanently restrained, enjoined and prohibited from directly or indirectly engaging in any

conduct in violation of Sections 4b(a)(1)(A), (B) and (C), and 4o(1)(A)
and (B) of the Act, 7 U.S.C. §§ 6b(a)(1)(A), (B) and (C), and 6o(1)(A) and
(B), and Commission Regulation 4.41(b), 17 C.F.R § 4.41 (b);

b.   Defendants BCLP and Weddington are permanently restrained, enjoined
and prohibited from directly or indirectly engaging in any conduct in
violation of Sections 4m(1) and 9(a)(4) of the Act, 7 U.S.C. §§ 6m(1) and
13(a)(4);

73.   Defendants are further permanently restrained, enjoined and prohibited from
directly or indirectly:

a.   trading on or subject to the rules of any registered entity, as that
term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40);

b.   entering into any transactions involving "commodity interests" (as
that term is defined in regulation 1.3(yy), 17 C.F.R. § 1.3(yy)
(2014)), for their own personal account or for any account in which
they have a direct or indirect interest;

c.   having any "commodity interests" traded on their behalf;

d.   controlling or directing the trading for or on behalf of any other
person or entity, whether by power of attorney or otherwise, in any
account involving commodity interests;

e.   soliciting, receiving, or accepting any funds from any person for
the purpose of purchasing or selling any commodity interests;

f.   applying for registration or claiming exemption from registration
with the Commission in any capacity, and engaging in any activity

requiring such registration or exemption from registration with the

Commission, except as provided for in Regulation 4.14(a)(9), 17

C.F.R. § 4.14(a)(9) (2014); and

g.   acting as a principal (as that term is defined in Regulation 3.1(a),

17 C.F.R. § 3.1(a) (2014)), agent or any other officer or employee

of any person (as that term is defined in Section 1a of the Act, 7

U.S.C. § 1a), or entity registered, exempted from registration or

required to be registered with the Commission, except as provided

for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9).

## V.  RESTITUTION, CIVIL MONETARY PENALTY AND OTHER EQUITABLE RELIEF

### A.  RESTITUTION

74.    Defendants shall pay, jointly and severally, restitution in the amount of three

hundred, seventy-five thousand, thirty nine dollars ($375,039) ("Restitution Obligation") plus

post-judgment interest, by paying these funds to each Participant set forth below in exchange for

the Participants' conveyance to Defendants of their interests in the Fund.  Post-judgment interest

shall accrue on the Restitution Obligation beginning on the date of entry of this Order and shall

be determined by using the Treasury Bill rate prevailing on the date of entry of this Order

pursuant to 28 U.S.C. § 1961 (2012).

75.    Defendants shall make Restitution Obligation payments under this Order to

Participant A in the amount of $190,837, Participant B in the amount of $44,954 and to

Participant C in the amount of $139,248.  Defendants shall simultaneously transmit copies of the

cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading

Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C.  20581.

76.    The amounts payable to Participants shall not limit the ability of any customer from proving that a greater amount is owed from Defendants or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any customer that exist under state or common law.

77.    Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each customer of Defendants or pool participant who suffered a loss is explicitly made an intended third-party beneficiary of this Order. Each customer of Defendants may seek to enforce obedience of this Order to obtain satisfaction of any portion of the restitution that has not been paid by Defendants to ensure continued compliance with any provision of this Order and to hold Defendants in contempt for any violations of any provision of this Order.

## B.    CIVIL MONETARY PENALTY

78.    Defendants shall pay, jointly and severally, a civil monetary penalty in the amount of six hundred and fifty thousand dollars ($650,000) ("CMP Obligation"), plus post-judgment interest. Post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961 (2012).

79.    Defendants shall pay their CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

Commodity Futures Trading Commission Division of Enforcement

      ATTN: Accounts Receivables
      DOT/FAA/MMAC/AMZ-341
      CFTC/CPSC/SEC
      6500 S. MacArthur Blvd.
      Oklahoma City, OK 73169

> (405) 954-7262 office
> (405) 954-1620 fax
> nikki_gibson@faa.gov

If payment by electronic funds transfer is chosen, Defendants shall contact Nikki Gibson or her successor at the address above to receive payment instructions and shall fully comply with those instructions. Defendants shall accompany payment of the CMP Obligation with a cover letter that identifies Defendants and the name and docket number of this proceeding. Defendants shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

## C.     PROVISIONS RELATED TO MONETARY SANCTIONS

80.     Partial Satisfaction: Acceptance by the Commission/CFTC of any partial payment of Defendants' Restitution Obligation or CMP Obligation shall not be deemed a waiver of his/her/their/its obligation to make further payments pursuant to this Order, or a waiver of the Commission/CFTC's right to seek to compel payment of any remaining balance.

**D.     COOPERATION**

81.     Defendants shall cooperate fully and expeditiously with the Commission, including the Commission's Division of Enforcement, and any other governmental agency in this action, and in any investigation, civil litigation or administrative matter related to the subject matter of this action or any current or future Commission investigation related thereto.

**E.     MISCELLANEOUS PROVISIONS**

82.     Notice: All notices required to be given by any provision in this Order shall be sent certified mail, return receipt requested, as follows:

Notice to Commission:

> Director of Enforcement
> Division of Enforcement
> U.S. Commodity Futures Trading Commission
> Three Lafayette Centre
> 1155 21st Street, N.W.
> Washington, D.C.  20581

All such notices to the Commission shall reference the name and docket number of this action.

83.     Change of Address/Phone: Until such time as Defendants satisfy in full their Restitution Obligation, Disgorgement Obligation, and CMP Obligation as set forth in this Consent Order, Defendants shall provide written notice to the Commission by certified mail of any change to their telephone number and mailing address within ten (10) calendar days of the change.

84.     Entire Agreement and Amendments: This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto date.  Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless: (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

85.    Invalidation: If any provision of this Order or if the application of any provision
or circumstance is held invalid, then the remainder of this Order and the application of the
provision to any other person or circumstance shall not be affected by the holding.

86.    Waiver: The failure of any party to this Consent Order or of any Defendants' pool
participants, clients, investors or customers, at any time require performance or any provision of
the Consent Order shall in no manner affect the right of the party or pool participants, client,
investors, or customer at a later time to enforce the same or any other provision of this Consent
Order. No waiver in one or more instances of the breach of any provision contained in this
Consent Order shall be deemed to be or construed as a further or continuing waiver of such
breach of any other provision of this Consent Order.

87.    Continuing Jurisdiction of this Court: This Court shall retain jurisdiction of this
action to ensure compliance with this Order and for all other purposes related to this action,
including any motion by Defendants to modify or for relief from the terms of this Order.

88.    Injunctive and Equitable Relief Provisions: The injunctive and equitable relief
provisions of this Order shall be binding upon Defendants, upon any person under the authority
or control of any of the Defendants, and upon any person who receives actual notice of this
Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active
concert or participation with Defendants.

89.    Authority: Weddington hereby warrants that he is an officer of BCLLC and BCLP
and duly authorized and empowered to enter, sign and submit this Consent Order on behalf of
BCLLC and BCLP.

90.    Counterparts and Facsimile Execution: This Consent Order may be executed in
two or more counterparts, all of which shall be considered one and the same agreement and shall

become effective when one or more counterpart have been signed by each of the parties hereto and delivered by facsimile, e-mail or otherwise to the other party, it being understood that all parties need not sign the same counterpart . Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

91.    Defendants understand that the terms of the Consent Order are enforceable through contempt proceedings, and that in any such proceedings they may not challenge the validity of this Consent Order.

**IT IS HEREBY ORDERED AND ADJUDGED**

There being no just reason for delay, the Clerk of the Court is hereby directed to enter this Consent Order for Permanent Injunction, Civil Monetary Penalty and Other Equitable Relief.

**IT IS SO ORDERED** on this _____4th_____ day of _____August____, 2015.

Hon. Collen McMahon
UNITED STATES DISTRICT JUDGE

CONSENTED TO AND APPROVED BY:

DocuSigned by:
Wayne Weddington
9DF17251BD594E9
_____
**Wayne P. Weddington III individually and
as an officer of Brunswick Capital LLC and
Brunswick Capital Partners LP**

_____
**CAMILLE M. ARNOLD**
Senior Trial Attorney
U.S. Commodity Futures Trading Commission

One of the Attorneys for Plaintiff
525 West Monroe Street, Suite 1100
Chicago, Illinois 60661
(312) 596-0524
camoldAcftc.gov

June 3, 2015

Date: _____

Date: _____July 31, 2018_____

**APPROVED AS TO FORM:**

**JEFF KERN, ESQ.**

Sheppard Mullin Richter & Hampton LLP
30 Rockefeller Plaza
New York, NY 10112-0015
212.653.8700 I main
ikern@sheppardmullin.com

Date: ___6/3/15___